UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELLY PACKER,

                  *Plaintiff,*

-*against*-

RONALD O. ROSS, and the GREENBURGH CENTRAL SCHOOL DISTRICT,

                  *Defendants.*

Index No.:

**COMPLAINT**

JURY TRIAL DEMANDED

**14 CIV. 7531**

**JUDGE SEIBEL**



    Plaintiff Shelly Packer, by her attorneys Steiner & Kostyn LLP complain of the defendant as follows:

**NATURE OF ACTION**

1.    This action is brought for compensatory and punitive damages to remedy discrimination on the basis of race and gender in the terms, conditions, and privileges of employment and for damages resulting the creation and continuation of a pervasive hostile work environment, to redress the depravation of rights secured to plaintiff by the Civil Rights Act of 1871, 42 U.S.C. § 1981, and 42 U.S.C. §1983.

**JURISDICTION**

2.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(3) and 1343(4) conferring original jurisdiction upon this court of any civil

action to recover damages or to secure equitable relief under any act of Congress providing for the protection of civil rights.

3. Venue in this Court is appropriate pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. §2000E-5(f)(3), and 28 U.S.C §1391, because the employment practices involved in this dispute occurred in the County of Westchester, State of New York, and thus, within the Southern District of New York.

## PARTIES

4. Plaintiff Shelly Packer is a Caucasian woman who, at all relevant times herein was in a relationship with an African-American man. Prior to her being compelled to accept retirement as a result of continuous acts of discrimination and being subjected to a hostile workplace environment, Ms. Packer worked as a teacher in Greenburgh Central School District ("District") for 20 years.

5. Defendant Ronald O. Ross ("Ross") was hired by the Greenburgh Central School District as the Principal of Woodlands High School in 2009 and named Superintendent of the Greenburgh Central School District in 2012.

6. Defendant Greenburgh Central School District is a special purpose municipal entity organized and existing under the laws of the State of New York, with offices in Hartsdale, NY.

## FACTS

7. The discriminatory acts against Ms. Packer and the creation of a hostile workplace environment began in 2009, when Ross became Principal of Woodlands High School ("Woodlands"). The discriminatory acts were so frequent and as to create and

maintain a pervasive hostile work environment affecting plaintiff's ability to continue in her role as a teacher at the Greenburgh Central School District. These acts continued until the plaintiff was compelled to retire in June, 2012.

8. As a result of the specific racial and gender-based animus of defendant Ross against the plaintiff, the plaintiff suffered adverse employment consequences and was constructively terminated from her position.

9. The workplace at Woodlands was characterized by a pervasive racial and gender based hostile work place environment due to the practice by the defendant Ronald O. Ross of Ross of making racist and sexist slurs. A federal action commenced by other Greenburgh Central School District employees and pending in the Southern District of New York entitled <u>Washington et al v. Ross et al</u>, bearing index No. 14 cv 3091 specifically addresses the hostile work environment created by Ross and sanctioned by the Greenburgh district.  Plaintiff was aware of Ross' continual attacks on and intimidation of Greeenburgh Central School District employees on account of their race, religion and gender.

10. Ross' animus was especially focused upon the plaintiff. Upon information and belief, this is attributable to the fact that the plaintiff served as the president of the teacher's union and, in that capacity, negotiated with Ross as his equal. Ross, upon information and belief, could not accept the fact that he was compelled to treat a Caucasian, Jewish, woman as his equal. He therefore directed his racial and gender animus toward her with particular acuity.

11. At his first faculty meeting as principal of Woodlands, Ross insulted plaintiff and

3

other Caucasian faculty members, telling them that they could not teach Black children. In September of 2010, Ross discriminated against plaintiff and other Jewish faculty members by purposefully keeping them at a faculty meeting just prior to the beginning of a Rosh Hashanah, for the purpose of denigrating plaintiff's holiday that was to begin at sundown of that day. Ross dismissively told plaintiff and other Jewish faculty members "Mazel Tov, or whatever it is you people say" during the faculty meeting.

12. Pervasive hostile and discriminatory treatment against the plaintiff continued. Within the past four years, Ross has accused the plaintiff of being a racist on at least two occasions including on September 11, 2011 in a meeting with secondary vice-president Valarie Barbaro and on September 20, 2011, when, in the presence of other teachers union officials and building workers, Ross accused plaintiff of racism falsely claiming that she mistreated building workers because they are African-American. Ross specifically alluded to the personal fact that Packer was in a relationship with an African-American man, saying that she was a racist at work.

13. Two days later, on September 22, 2011, Ross again called plaintiff a racist in front of and within earshot an African-American parent of one of plaintiff's students.

14. In January of 2011, when an anonymous letter was sent from the school board signed the "white teachers." Defendant Ross accused the union of sending the letter. Plaintiff was president of the union, and the accusation was a thinly veiled accusation against the plaintiff.

15. The frequent accusations on the part of Ross that plaintiff was racist was a demonstration of Ross' own gender and racial bias, and these accusations were part and

4

parcel of the hostile work environment created by Ross and sanctioned by the district.

15. On or about February 14, 2011, plaintiff received a letter from Ross's assistant, William Washington informing her that she was to lose her classroom and be assigned to teach in three different classrooms in different parts of the building, with no place to secure the materials. Plaintiff was required to teach in three different classrooms and keep all of her belongings on a cart. Plaintiff was the only similarly situated teacher who had been deprived of a classroom. Upon information and belief the deprivation of the classroom was initiated and approved by Ross, and Ross refused to consider the options suggested by the plaintiff that would provide her with a classroom. At a February 16, 2011 meeting called by Ross concerning the classroom, Ross informed the plaintiff that his decision was not personal, since he could go for weeks without thinking of her; that he could eliminate her position; and that Plaintiff was selfish. In reality, the deprivation of the plaintiff's classroom was a discriminatory act based upon the gender and race of the plaintiff.

16. In about October, 2011, Plaintiff was removed from one of her health education classes at Woodlands and assigned to a less desirable special education assignment in the middle school. The removal of plaintiff was contrary to district policy and procedure and was part and parcel of Ross' effort to degrade and undermine the Plaintiff's position at the District.

17. Ross also denigrated the plaintiff on the basis of her race and gender to other Greenburgh Central School District parents and staff. Upon information and belief, and by the way of example, Ross referred to plaintiff as a "white bitch", "fucking bitch" and

5

"cunt" and made frequent negative references concerning whites, women and Jews.

18. Plaintiff suffered regular and persistent acts of discrimination. For example, Ross refused to acknowledge plaintiff at faculty meetings or allow her to speak. In about January 2012 Ross and Washington entered the plaintiff's classroom while she was teaching, made comments to each other and left the room. Upon information and belief, the purpose of the visit was to intimidate the plaintiff.

19. Plaintiff complained about the discrimination and hostile work environment, both to Ross directly and on a regular basis to the assistant superintendant of the District. The plaintiff also made the District fully aware of the discrimination against her by virtue of the contents of the complaint that she filed with the New York State Division of Human Rights on November 1, 2011. The District never addressed the discriminatory actions by Ross against the plaintiff.

20. By reason of the Ross and the District's gender and racial hostility against the plaintiff and the pervasive hostile work environment created by the District, the plaintiff has suffered physical and emotional distress, anxiety, humiliation, and other physical and emotional symptoms.

21. Adverse employment actions were taken against the plaintiff by Ross and the District as set forth herein including, but not limited to the constructive termination of the plaintiff, who was compelled to accept retirement because the intolerable conditions of the work environment imposed as a result of the District's pervasive discriminatory animus.

## AS AND FOR A FIRST CAUSE OF ACTION

22. Paragraphs 1 through 21 of the Complaint are restated and realleged as if fully restated and realleged herein.

23. Defendant has intentionally discriminated against plaintiff on account of her race and gender in violation of the civil rights act of 1871 (42 USC §1981, 42 USC§1983) by denying her equal terms and conditions of employment; by creating a pervasive hostile work environment and by compelling the plaintiff to leave her place of employ (constructive termination.)

## AS AND FOR A SECOND CAUSE OF ACTION

24. Paragraphs 1 through 23 are restated and realleged with the same force and effect as if fully stated and alleged herein.

25. Defendant has intentionally discriminated against plaintiff on account of her race and sex in violation of the civil rights act of 1871(42 USC §1981, 42 USC§1983) causing anxiety, pain, suffering and humiliation.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. Assume jurisdiction of this action;

2. Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3. Issue a declaratory injunction that the acts of defendants complained of were in violation of the aforementioned laws;

4. Order defendants to make Plaintiff whole for all earnings and other benefits

he would have received but for defendants' violations of law, including but not limited to: wages with prejudgment interest thereon (back pay and front pay), pension, and other lost fringe benefits;

5. Order defendants to pay Plaintiff compensatory and punitive damages for injuries suffered as a result of defendants' violation of the aforementioned laws;

6. Award Plaintiff the costs and disbursements of this action together with reasonable attorney's fees; and

7. Award Plaintiff such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated: September 11, 2014
       White Plains, New York

Respectfully submitted,

STEINER & KOSTYN LLP

By: _____
Scott J. Steiner (SS-0484)
Attorney for Plaintiff
2 William Street, Suite 302
White Plains, NY 10005
(914) 328-4734
ssteiner@scottjsteinerlaw.com